IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JOSEPH PAUL ROACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-080 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Joseph Paul Roach appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff protectively applied for DIB on October 13, 2011, alleging a disability onset date of March 30, 2010. Tr. ("R."), pp. 44, 155-61, 182. Plaintiff was forty-seven years old at his alleged disability onset date and was fifty-one years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration by the Court. R. 28, 182. Plaintiff applied for disability benefits based on lumbar disc disease, a left rotator cuff injury,

anxiety, depression, high blood pressure, left leg problems, right hip pain, and obesity. R. 22, 82, 83, 194. Plaintiff had earned his General Educational Development certificate, and prior to his alleged disability had accrued a relevant work history that included shear machine operator, forklift operator, assembler, and table saw operator. R. 27, 43-49, 67-68, 185, 195.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 82-86. Plaintiff requested a hearing before the ALJ, R. 97-98, and the ALJ held a hearing on December 18, 2013. R. 34-81. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Tina Baker-Ivey, a Vocational Expert ("VE"). Id. On January 27, 2014, the ALJ issued an unfavorable decision. R. 17-33.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since his alleged onset date of March 30, 2010. (20 C.F.R. § 404.1571 *et seq*.).

2. The claimant has the following severe impairments: Left shoulder surgical residuals; Depression and Anxiety; Chronic Pain; and Obesity. (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) except that claimant should only occasionally reach overhead with his left arm, or crawl; and should perform simple, routine, and repetitive work with few, if any, workplace changes.[1] In

---

[1]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

2

> light of this RFC, the claimant is capable of performing past relevant work as an Assembler (DOT 706.687-010, light work, SVP 3).

R. 22-27.

Because the ALJ determined that Plaintiff could perform his past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from March 30, 2010, through January 27, 2014 (the date of the decision). R. 28. When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to assign proper weight to the opinion of Plaintiff's treating physician, Charles Jackson, M.D., that he was totally disabled; (2) the ALJ failed to assign proper weight to the opinion of a consultative psychological examiner, John C. Whitley, III, Ph.D.; and (3) the ALJ improperly determined that Plaintiff could perform his past relevant work. See doc. no. 11 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 12 (Comm'r's Br.").

---

> or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ failed to properly analyze the opinions of Dr. Charles Jackson, a treating physician, and Dr. John Whitley, a psychologist who performed a one-time consultative examination, which in turn led to any improper formulation of an RFC for light work. As part of that RFC, the ALJ limited Plaintiff to "simple, routine, and repetitive work with few, if any, workplace changes," a limitation which Plaintiff argues prevents him from returning to his past relevant work as testified to by the VE. As explained below, the ALJ did not err in his consideration of the medical opinions. Likewise, the ALJ did not err in his use of the VE at the hearing to determine that Plaintiff could perform his past relevant work as an assembler. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A. The ALJ Properly Weighed the Opinion of Total Disability by Dr. Jackson.

Plaintiff began his treatment relationship with Dr. Jackson in June of 2011, after Plaintiff first saw a colleague of Dr. Jackson in May of 2011 for his new patient appointment. R. 395-99. Dr. Jackson's summary of the June 2011 visit reveals that he assessed Plaintiff

5

with hypertension, anxiety disorder, depression with anxiety, shoulder bursitis/tendonitis, gastroesophageal reflux disease, and long term use of medication. R. 398. As discussesd in more detail below, the treatment notes thereafter consist primarily of medication refills, but upon Plaintiff's complaints of back pain, Dr. Jackson ordered an MRI of Plaintiff's lumbar spine in February of 2012. The results of the MRI showed moderate lumbar spondylosis but no large focal disc herniation. R. 355-56. Dr. Jackson eventually wrote a letter in support of Plaintiff's disability application in which he opined Plaintiff was completely disabled, (R. 582), a letter upon which Plaintiff relies in support of his contention that the ALJ erred in finding that he could return to his past relevant work.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (requiring substantial weight be given to the opinion of a treating physician unless "good cause" to the contrary is shown).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see

also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Commissioner of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)). Furthermore, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 404.1527(d).

Here, Plaintiff does not point to any specific medical findings contradicting the ALJ's finding that Plaintiff could perform light work with the limitations noted. Plaintiff's brief generally recounts that the record is repleat with treatment records from Dr. Jackson, (Pl.'s Br., pp. 5-6), but Plaintiff fails to point out any objective findings in those treatment records supporting Dr. Jackson's opinion that Plaintiff is "TOTALLY and PERMANENTLY DISABLED." R. 582 (emphasis in original). The ALJ correctly noted that an opinion of total disability is reserved to the Commissioner, and the ALJ also properly discounted Dr. Jackson's opinion as "not corroborated by the objective medical evidence." R. 23; see also SSR 96-5p; 20 C.F.R. § 404.1527(d).

Plaintiff argues that Dr. Jackson "identified Plaintiff's diagnoses" and that his "physical findings were supported by an MRI." Pl.'s Br., pp. 5, 6. As the ALJ recounted, (R. 23), and the Commissioner correctly points out, (Comm'r's Br., p. 9), although Plaintiff's MRI revealed evidence of moderate lumbar spondylosis, there was no large focal disc herniation and no evidence of root or spinal cord impingement. R. 355. Plaintiff fails to explain how the MRI report alone supports the significant restrictions in Dr. Jackson's opinion purportedly showing that Plaintiff cannot perform light work. Indeed, treatment notes from August 7, 2012, approximately six months after the MRI, do not list any back problems under "Assessment," and Plaintiff reported his pain level at zero one a scale of one to ten. R. 424-25. There then appears to be a gap of approximately another eight months in Plaintiff's treatment history with Dr. Jackson, at which time Dr. Jackson completed a disability questionnaire on April 4, 2013 and opined Plaintiff was totally and permanently disabled since January 2012. R. 503-10. Dr. Jackson parroted that same opinion of total disability in a letter, with no attached supporting documentation, dated December 16, 2013. R. 576-77. Moreover, the ALJ correctly discredited Dr. Jackson's opinion that Plaintiff met the criteria for Listing 1.01 and 1.08 because there is no Listing 1.01, and Listing 1.08 refers to soft tissue injuries such as burns, a condition upon which Plaintiff did not apply for disability or otherwise document in the record. R. 23.

Consistent with the ALJ's finding of no support in the objective medical evidence, Dr. Jackson's records show that when Plaintiff first started seeing him in 2011, Plaintiff was in no acute distress and the treatment plan dealt only with Plaintiff's high blood pressure, shoulder problems and gastroesophageal reflux disease. R. 399. Two months later, Plaintiff started to report some back pain, but he was still found to be in "no acute distress." R. 400. Indeed,

8

even as Plaintiff continued to report some pain in his back, the physical examinations were normal, treatment was conservative, Plaintiff generally got medication refills, even after the MRI, and treatment notes show "no acute distress." R. 404-10.

As to Plaintiff's shoulder pain, the ALJ further explained that although Plaintiff presented with stiffness and decreased range of motion in his left shoulder, as well as joint tenderness, he reported shortly after surgery that he was doing well. R. 26 (citing Ex. 1F, p. 3; Ex. 12F, p. 5). One day before his alleged onset date, Plaintiff reported being "exceptionally pleased" with his shoulder surgery and wanting to return to modified work. R. 26 (citing Ex. 1F, p. 5). The ALJ also pointed out that state agency medical expert James Wellons, M.D., reviewed the medical evidence and opined that Plaintiff could perform light work with restrictions in overhead reaching with his left arm. R. 27 (citing Ex. 10F (R. 382-89)). The RFC incorporates this documented limitation by restricting Plaintiff to only occasionally reaching overhead with his left arm. R. 23.

To the extent Plaintiff also complains that the ALJ erred by not making any separate finding about Dr. Jackson's psychological opinion, that argument also misses the mark. Initially, Dr. Jackson's medical specialty is identified as General Medicine. R. 510. Indeed, in the letter by Dr. Jackson opining Plaintiff was totally disabled, in his paragraph reviewing psychological symptoms, Dr. Jackson reports Plaintiff "has been followed regularly by our counselor." R. 581. The counselor was identified by Plaintiff at the hearing as Kathryn Johnson, a clinical social worker. R. 60, 427. According to the social security regulations, the only sources "who can provide evidence to establish an impairment" are licensed physicians (medical or osteopathic doctors), licensed or certified psychologist, licensed optometrists, licensed podiatrists, and qualified speech pathologists. 20 C.F.R. §

9

404.1513(a). The opinion of a licensed social worker is not a "medical opinion." Tilley v. Colvin, No. 4:13-cv-01869, 2014 WL 7365863, at *4 (N.D. Ala. 2014).

Plaintiff contends that Dr. Jackson, a doctor with a medical specialty of General Medicine, "endorsed" several conditions under Listing 12.04, related to Affective Disorders. Pl.'s Br., p. 6 (citing R. 528). That page of the record is merely a photocopy of descriptions of various Listings, including 12.04, with certain symptoms circled. R. 528. The page is unsigned, undated, and not supported with any objective medical evidence. The only initials appearing on the page are those of counselor Kathryn Johnson, who circled various symptoms under Listing 12.03, related to Schizophrenic, Paranoid and Other Psychotic Disorders. Id. Likewise, the purported "endorsement" by Dr. Jackson of several symptoms circled on the photocopied page under Listing 12.06, related to Anxiety Related Disorders, is unsigned, undated, and not supported with any objective medical evidence. R. 532. As discussed in detail in Part III.B, *infra*, the ALJ thoroughly addressed the relevant and supported evidence concerning Plaintiff's mental condition, and the ALJ did not err in assigning no weight to any opinion on this topic by Dr. Jackson and his staff which were not supported by objective medical evidence.

### B. The ALJ Properly Assessed the Opinion of One-Time Consultative Examiner Dr. Whitley.

Dr. Whitley conducted his one-time consultative psychological examination of Plaintiff on September 6, 2012. R. 455. As discussed in more detail below, Dr. Whitley summarized that Plaintiff appeared to "be experiencing secondary depression" that began when he lost his job and that his depression and secondary pain might interfere with his ability to timely complete tasks. R. 458. Plaintiff does not contend that the ALJ failed to

10

acknowledge Dr. Whitley's examination. He does argue, however, that the ALJ failed to explain the weight he assigned to the findings or otherwise incorporate limitations from Dr. Whitley's findings in Plaintiff's RFC.

As a general rule, the opinion of a one-time examiner is not entitled to great weight. Stone v. Commissioner of Soc. Sec., 544 F. App'x 839, 842 (11th Cir. 2013); Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004). The law is clear, "The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." Stone, 544 F. App'x at 842 (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)). However, as part of the duty to develop a full and fair record, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In the absence of a statement from the ALJ concerning the weight given to different medical opinions and the reasons for assigning such weight, the reviewing court will be unable to determine whether the decision is supported by substantial evidence. Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).

As referenced above, Plaintiff concedes the ALJ discussed the findings resulting from the one-time consultative psychological examination conducted by Dr. Whitley, but he contends that "[t]here is simply no discussion of weight when referencing Dr. Whitley's report." Pl.'s Br., pp. 7, 8. The record proves otherwise. First, the ALJ acknowledged that Dr. Whitley noted Plaintiff's pain would have an impact on the ability to sustain concentration, persistence, and pace, but he also opined Plaintiff could communicate adequately with others, could understand and follow multi-step instructions, and was mildly vulnerable to decompensate under sustained and excessive stress changes or demands. R. 27 (citing Ex.

11

14F).

Second, the discussion of Dr. Whitley's report came immediately after the ALJ's discussion of another consultative examiner, William McDaniel, Ph.D. Approximately seven months prior to Dr. Whitley's examination, Dr. McDaniel opined that Plaintiff's main problems were physical in nature and that Plaintiff had reported "his problems with anxiety and depression [were] no longer problems" once he got medication. R. 26 (citing Ex. 6F). Additionally, immediately after discussing Dr. Whitley's report, the ALJ discussed another report by a state agency mental health expert, James Mullins, Ph.D., completed a little over a month after Dr. Whitley examined Plaintiff. R. 27. Dr. Mullins opined Plaintiff was moderately limited in four domains, two of which included maintaining attention and concentration for extended periods and responding appropriately to changes in the work setting. Id. (citing Ex. 17F). The ALJ then concluded that Dr. Mullins's "opinion is wholly consistent with the findings of the consultative examiners (Exhibits 6F; 14F), and the undersigned affords it significant weight." R. 27. Thus, contrary to Plaintiff's contention, the ALJ did assign weight to Dr. Whitley's opinion, (Ex. 14F), in the context of his discussion of "wholly consistent" findings of Drs. McDaniel, Whitley, and Mullins.

Indeed, the ALJ even included the mental restrictions noted by Drs. McDaniel, Whitley, and Mullins in the RFC by limiting Plaintiff to "simple, routine, and repetitive work with few, if any, workplace changes." R. 25. Thus, as the Commissioner correctly distinguishes the case upon which Plaintiff relies, Turner v. Commissioner of Soc. Sec., No. 6:12-cv-937, 2013 WL 5330430 (M.D. Fla. Sept. 23, 2013), this is not a case where the ALJ's RFC contradicted the opinion of the physician to whose opinion the ALJ failed to assign weight. "Failure to state the weight given to a medical opinion is generally harmless where

12

the opinion at issue does not contradict the ALJ's RFC determination." Turner, 2013 WL 5330430, at * 4 (citing Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005).) Here, not only did the ALJ group Dr. Whitley's opinion by specific reference as being afforded significant weight, but his mental limitations were included in the final RFC. The ALJ did not err on this point.

### C. The ALJ Properly Concluded Plaintiff's RFC Allowed Him to Perform Past Relevant Work.

To the extent Plaintiff argues that the ALJ formulated an incorrect RFC based on improper treatment of the opinions of Dr. Jackson and Dr. Whitley, as explained in detail above, there was no error by the ALJ with respect to his analysis of these two opinions. To the extent Plaintiff argues that the ALJ improperly relied on the information provided by the VE at the hearing to determine Plaintiff could perform his past relevant work, that argument also fails.

#### 1. The Role of the VE.

Social Security regulations state an ALJ may rely on the knowledge or expertise of a VE in determining whether there are jobs a claimant can perform. Specifically, an ALJ may consult a VE to determine whether past relevant work can be done: "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). The VE may also provide expert testimony in response to a hypothetical question about whether a person with certain physical and mental limitations can "meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."

13

Id.; see also Simpson v. Commissioner of Soc. Sec., 423 F. App'x 882, 884 (11th Cir. 2011) ("The ALJ may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work."). A VE need not produce detailed reports or statistics in support of his or her testimony, but there must be a reasoned basis for the testimony. Bryant v. Commissioner of Soc. Sec., 451 F. App'x 838, 839 (11th Cir. 2012); Curcio v. Commissioner of Soc. Sec., 386 F. App'x 924, 926 (11th Cir. 2010); Thibeault v. Commissioner of Soc. Sec., No. 8:13-cv-586, 2013 WL 6498390, at *13 (M.D. Fla. Dec. 11, 2013).

### 2. The ALJ Properly Relied on the VE's Testimony.

The VE testified the only past relevant work Plaintiff could perform was that of assembler, a job with a specific vocational preparation ("SVP") of 3. Plaintiff argues the ALJ erred in concluding that job was available for Plaintiff in light of the RFC limitation for "simple" work. Pl.'s Br., p. 9. Using the skill level definitions in 20 C.F.R. § 404.1568(a), the Dictionary of Occupational Titles lists the SVP categorization for unskilled work at 1-2 and for semi-skilled work at 3-4. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). Plaintiff contends that simple work is generally equated with unskilled work, SVP 1-2, and because the job of assembler is assigned an SVP of 3 in the Dictionary of Occupational Titles ("DOT"), the ALJ erred in relying on the VE's testimony to conclude Plaintiff could perform past relevant work. Pl.'s Br., pp. 9-10.

At the hearing, the ALJ presented a hypothetical to the VE based on the RFC for light work with the restrictions ultimately contained in the ALJ's written opinion and asked the VE if the hypothetical individual could perform any of Plaintiff's past work either as he described it or as listed in the DOT. R. 69-70. The VE testified Plaintiff could assemble cabinets as he testified he had performed the job. Id. In ruling that Plaintiff could perform his past relevant work as an

assembler, the ALJ specifically noted Plaintiff's testimony that he had performed the job for five months, and therefore had acquired the skills necessary for the position. R. 27. The VE also specifically testified that five months was sufficient time to learn how to do the semiskilled job. R. 70. According to Plaintiff, however, because the VE testified that she had no personal knowledge of the assembler position other than what she had studied in the DOT, the ALJ should not have accepted the VE's testimony over information in the DOT that the assembler job had an SVP that exceeded Plaintiff's limitation to simple work. Pl.'s Br., pp. 9-10.

Pursuant to Social Security Ruling 00-4p, the ALJ "has an affirmative responsibility to ask about any possible conflict between [the] VE . . . evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. The ALJ must elicit an explanation from the VE "[w]hen there is an apparent unresolved conflict." Id. at *2; see also Leonard v. Commissioner of Soc. Sec., 409 F. App'x 298, 301 (11th Cir. 2011) (ALJ must elicit a reasonable explanation for discrepancy between DOT and VE testimony). Nevertheless, "[e]ven assuming that an inconsistency existed between the testimony of the [VE] and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the [VE]. Our precedent establishes that the testimony of a [VE] 'trumps' an inconsistent provision of the DOT in [the Eleventh] Circuit." Miller v. Commissioner of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999)). Thus, Plaintiff is incorrect in his argument, (Pl.'s Br., p. 10), that the ALJ was required to prefer the DOT to the testimony of the VE.

Moreover, the VE testified that Plaintiff could perform the job as he had described it. R. 70. The VE's testimony concerning having no personal knowledge about the assembler job came in response to counsel's questions concerning the lifting requirements for the

15

assembler job when counsel attempted to present a hypothetical based on restrictions from Dr. Jackson's opinion, (R. 71-72), which as explained above, was properly assigned no weight by the ALJ because of the lack of objective corroboration in the medical evidence. In any event, the "discrepancy" Plaintiff has identified with the DOT is a red herring because Plaintiff testified as to how he performed the job, and the ALJ and the VE both stated that they were basing their conclusions on the information provided by Plaintiff concerning how he performed, and had acquired the skills for, the job. R. 27-28, 70.

In light of Plaintiff's RFC, the requirements of his past work as an assembler as Plaintiff described the job, and the testimony of the VE, the ALJ properly concluded Plaintiff could perform his past relevant work as an assembler, and therefore was not disabled.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 7th day of July, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA